SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PETER H. KLEE, Cal. Bar No. 111707
  pklee@sheppardmullin.com
501 West Broadway, 19th Floor
San Diego, California  92101
Telephone:  619.338.6500
Facsimile:  619.234.3815

SUZANNE Y. BADAWI, Cal. Bar No. 194692
  sbadawi@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California  90071-1422
Telephone:  213.620.1780
Facsimile:  213.620.1398

Attorneys for Defendant
ALLSTATE NORTHBROOK
INDEMNITY COMPANY (erroneously
sued as "ALLSTATE INSURANCE
COMPANY")

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ROBERT WAYNE IVES,<br><br>              Plaintiff,<br><br>        v.<br><br>ALLSTATE INSURANCE COMPANY, a business entity, form unknown; and DOES 1 through 100, inclusive,<br><br>              Defendants. | Case No. 2:20-cv-02505-AB-AGRx<br><br>The Hon. André Birotte, Jr.<br><br>**DEFENDANT ALLSTATE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Notice of Motion and Motion, Statement of Uncontroverted Facts, Declarations of Gillian Mellon, Mitchel Cross, Carl Klein and Suzanne Y. Badawi and Appendix of Exhibits filed concurrently; [Proposed] Order and [Proposed] Judgment lodged concurrently.]<br><br>Date:     February 12, 2021<br>Time:     10:00 a.m.<br>Crtrm:   7B<br><br>Complaint filed:   February 5, 2020<br>Trial Date:          June 8. 2021 |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   UNDISPUTED FACTS ........................................................................ 4

    A.    The Allstate Auto Policy ............................................................ 4

    B.    September-December 2019: The Auto Accident and Plaintiff's
    Initial Four Month Delay; In December, Plaintiff Demands UM
    Arbitration Without Providing Any Medical Records .......................... 4

    C.    December 2019-January 2020: Plaintiff Demands That Allstate
    Either Pay the $250,000 Policy Limit or Submit the Claim To
    Arbitration; Plaintiff Doesn't Provide Any Medical Records. ............. 5

    D.    January 2020-June 2020: In the Midst of a Deadly Pandemic, the
    Parties Selected An Arbitrator, Conducted Discovery, and
    Allstate Scheduled A Medical Examination To Evaluate the
    Injury Claim; Plaintiff Finally Provided Medical Records to
    Allstate. ................................................................................. 6

    E.    July-August 2020: The Claim Settled for $125,000 Shortly After
    Allstate Received The Medical Expert's Opinion; Allstate Gave
    Plaintiff the Benefit of the Doubt as To His Claim of Ongoing
    Pain. ..................................................................................... 9

III.  PLAINTIFF'S BAD FAITH CLAIMS FAILS BECAUSE THERE
    WERE NO BENEFITS DUE UNDER THE CONTRACT ......................... 10

IV.   PLAINTIFF'S BAD FAITH CLAIM ALSO FAILS BECAUSE
    ALLSTATE TIMELY PAID ALL  BENEFITS THAT WERE DUE. ......... 13

V.    PLAINTIFF CANNOT STATE A CLAIM FOR BAD FAITH
    BECAUSE GENUINE DISPUTES EXISTED ABOUT HIS
    INSURANCE CLAIM ................................................................. 14

    A.    The Standards for Evaluating a Bad Faith Claim ................................ 14

        i.    Mistakes Are Not Enough To Show Unreasonableness. ............. 14

        ii.   It Is Not Unreasonable To Withhold Payment Where
        There Is A "Genuine Dispute" About The Value Of The
        Claim. ............................................................................. 15

    B.    The Existence of Three, Independent Genuine Disputes Bars
    Plaintiff's Bad Faith Claim. ........................................................ 16

        i.    Genuine Dispute 1: The disparity between plaintiff's
        demand ($250,000) and the settlement amount ($125,000)
        confirms the existence of a genuine dispute. ........................... 16

        ii.   Genuine Dispute 2: Allstate's reliance on the opinions of
        an independent expert precludes plaintiff's bad faith claim. ....... 17

-i-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        iii.     Genuine Dispute 3: There was an inherent genuine dispute over general damages for pain and suffering. ........................... 18

VI.     ALLSTATE DID NOT UNREASONABLY DELAY. .................................. 20

VII.    THE MERITLESS DERIVATIVE CLAIMS .................................................. 21

VIII.  THE PUNITIVE DAMAGES CLAIM FAILS AS A MATTER OF LAW ...................................................................................................... 22

IX.     CONCLUSION ............................................................................................ 24

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*A. Teichert & Son, Inc. v. State* (1965)
  238 Cal.App.2d 736 [48 Cal.Rptr. 225] ............................................................. 11

*Adams v. GEICO Ins. Co.*
  187 F. Supp. 2d 1207 (C.D. Cal. 2002) .............................................................. 17

*Allstate Ins. Co. v. Madan*
  889 F. Supp. 374 (C.D. Cal. 1995) ..................................................................... 17

*Anderson v. Liberty Lobby Inc.*
  411 U.S. 242 (1986) ............................................................................................ 22

*In re Angelia P.*
  28 Cal. 3d 908 (1981) ......................................................................................... 23

*Appalachian Insurance Co. v. Rivcom Corp.* (1982)
  130 Cal.App.3d 818 [182 Cal.Rptr. 11] ............................................................. 12

*Badell v. Celtic Life Ins. Co.*
  1193 (N.D. Cal. 2001) ........................................................................................ 18

*Badell v. Celtic Life Ins. Co.*
  159 F. Supp. 2d 1186 (N.D. Cal. 2001) .............................................................. 17

*Beagle v. Vasold*
  65 Cal. 2d 166 (1966) ......................................................................................... 19

*Beck v. State Farm*
  54 Cal. App. 3d 347 (1976) ................................................................................ 23

*Blake v. Aetna Life Ins. Co.*
  99 Cal.App.3d 901 (1979) .................................................................................. 20

*Board of Trustees of Univ. of Illinois v. Insurance Corp. of Ireland*
  969 F. 2d 329 (7th Cir. 1992) ............................................................................. 23

*Capelouto v. Kaiser Found. Hosp.*
  7 Cal. 3d 889 (1972) ........................................................................................... 19

*Cardiner v. Provident Life and Accident Ins. Co.*
    158 F. Supp. 2d 1088 (C.D. Cal. 2001) .................................................. 17

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*
    90 Cal. App. 4th 335 (2001) .................................................. 14, 15, 18

*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001)
    92 Cal.App.4th 886 [112 Cal.Rptr.2d 304] .......................................... 12

*Cruz v. HomeBase*
    83 Cal. App. 4th 160 (2000) .......................................................... 23

*Devonwood Condominium Owners Ass'n v. Farmers Ins. Exchange*
    162 Cal. App. 4th 1498 (2008) ....................................................... 18

*Enger v. Allstate Ins. Co.* (E.D. Cal. 2009)
    682 F.Supp.2d 1094 aff'd (9th Cir. 2010) 407 Fed.Appx. 191 ....................... 12

*Everett v. State Farm General Ins. Co.*
    162 Cal. App. 4th 649 (2008) ......................................................... 13

*Fraley v. Allstate Ins. Co.*
    81 Cal. App. 4th 1282 (2000) ......................................................... 18

*Franceschi v. American Motorists Ins. Co.*
    852 F. 2d 1217 (9th Cir. Cal. 1988) .................................................. 15

*Garner v. State Farm Mut. Auto. Ins. Co.*
    (N.D. Cal., June 30, 2008, C 08-1365 CW) 2008 WL 2620900 ......................... 12

*Globe Indem. Co. v. Superior Court*
    6 Cal.App.4th 725 (1992) ............................................................. 20

*Goldberg v. State Farm Fire & Cas.*
    (C.D. Cal., Apr. 5, 2002, CV 01-11193 LGB (EX)) 2002 WL
    768893 aff'd, *Goldberg v. State Farm Fire and Cas. Co.* (9th Cir.
    2004) 88 Fed.Appx. 197 .............................................................. 12

*Greater Westchester Homeowners Assn. v. County of Los Angeles*
    26 Cal. 3d 86 (1979) ................................................................. 19

*Gruenberg v. Aetna Ins. Co.* (1973)
    9 Cal.3d 566 ......................................................................... 13

*Guebara v. Allstate Ins. Co.*
   237 F. 3d 987 (9th Cir. 2001) ................................................................. 14, 15, 17

*Gunderson v. Fire Ins. Exch.* (1995)
   37 Cal. App. 4th 1106 ................................................................................. 13

*Hanson v. Prudential Ins. Co.*
   783 F.2d 762 (9th Cir. 1985) ...................................................................... 14

*Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices*
   207 Cal. App. 3d 1277 (1989) ..................................................................... 21

*Howell v. Hamilton Meats & Provisions, Inc.*
   52 Cal.4th 541 (2011) ................................................................................... 7

*Interinsurance Exchange v. Superior Court* (1989)
   213 Cal.App.3d 1439 ................................................................................... 12

*Keshish v. Allstate Ins. Co.*
   959 F. Supp. 2d. 1226 (C.D. Cal. 2013) ................................................ 16, 18

*Klubnikin v. California Fair Plan Assn.*
   84 Cal. App. 3d 393 (1978) ......................................................................... 18

*Lazar v. Superior Court*
   12 Cal.4th 631 (1996) .................................................................................. 21

*Leo v. State Farm Mut. Auto. Ins. Co.*
   939 F. Supp. 1186 (E.D. Pa. 1996) .............................................................. 19

*Love v. Fire Ins. Exch.* (1990)
   221 Cal.App.3d 1136 ................................................................................... 13

*Lunsford v. American Guarantee & Liability Ins. Co.*
   18 F. 3d 653 (9th Cir. 1994) ........................................................................ 15

*Luttrell v. Island Pacific Supermarkets, Inc.*
   215 Cal.App.4th 19 (2013) ............................................................................ 7

*Mason v. Allstate Ins. Co.*
   2014 WL 212245 (C.D. Cal. Jan. 6, 2014) .............................................. 13, 16

*Maxwell v. Fire Ins. Exch.*
   60 Cal. App. 4th 1446 (1998) ...................................................................... 13

*Maynard v. State Farm Mut. Auto. Ins. Co*
    499 F. Supp.2d 1154 (C.D. Cal. 2007)................................................16, 17, 18, 20

*Merritt v. Reserve Ins. Co.*
    34 Cal. App. 3d 858 (1973) ............................................................................. 14

*Notrica v. State Compensation Ins. Fund*
    70 Cal. App. 4th 911 (1999) ............................................................................ 14

*O'Hara v. Western Seven*
    75 Cal. App. 3d 798 (1977) ............................................................................. 22

*Paulson v. State Farm Mut. Auto. Ins. Co.*
    867 F. Supp. 911 (C.D. Cal. 1994) .................................................................. 13

*Rappaport-Scott v. Interinsurance Exch. of the Automobile Club*
    146 Cal. App. 4th 831 (2007) ..............................................................14, 15, 16

*Rattan v. United Services Auto. Ass'n* (2000)
    84 Cal.App.4th 715............................................................................................ 13

*Rudd v. California Casually Gen. Ins. Co.* (1990)
    219 Cal.App.3d 948............................................................................................ 11

*Seffert v. Los Angeles Transit Lines*
    56 Cal. 2d 498 (1961) ...................................................................................... 19

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg.*
    78 Cal. App. 4th 847 (2000) ............................................................................ 23

*Silberg v. California Life Ins. Co.* (1974)
    11 Cal.3d 452.................................................................................................... 13

*Stewart v. Truck Ins. Exch*
    17 Cal. App. 4th 468 (1993) ......................................................................22, 23

*Tomaselli v. Transamerica Ins. Co.*
    25 Cal. App. 4th 1269 (1994) .......................................................................... 23

*United Services Auto. Assn. v. Superior Court* (1990)
    221 Cal.App.3d 79............................................................................................. 11

*Waller v. Truck Ins. Exchange* (1995)
    11 Cal. 4th 1...................................................................................................... 13

*White v. Ultramar, Inc.*
    21 Cal. 4th 563 (1999) ........................................................................... 23

<u>Statutes</u>

Cal. Civ. Code § 3294 ................................................................................... 22

Cal. Civ. Code § 3294(c)(1) ........................................................................ 22

Cal. Civ. Code § 3294(c)(2) ........................................................................ 22

Cal. Civ. Code § 3294(c)(3) ........................................................................ 22

California Arbitration Act, Code of Civil Procedure § 1280 *et seq.* ......................... 18

Ins. Code, § 11580.2(f) ....................................................................... 11, 12

Ins. Code, §§ 11580.2(f), (h)(2), and (p)(3) ................................................. 4

Insurance Code § 11580.2 ................................................................. 4, 10, 16

# I.      INTRODUCTION

This is an insurance bad faith case arising out of an uninsured motorist ("UM") claim that settled for $125,000 <u>within six months</u>.

There is no dispute that plaintiff's UM claim settled.  There is no dispute that <u>Allstate fully paid the claim</u>.  Accordingly, plaintiff is *not* suing for breach of contract.  Plaintiff's sole complaint is that Allstate should have paid him sooner and <u>without question</u> – despite the fact that (i) he was demanding $250,000 primarily for pain and suffering for an injury that healed on its own with virtually no medical treatment, and (ii) he was demanding ***double*** the maximum amount the claim was worth as established by the parties' settlement.  Plaintiff is not correct.

***The Facts.***  In September 2019, plaintiff was in an auto accident and sustained arm lacerations and a fractured sternum.  In December 2019, his lawyer demanded UM arbitration, and then one month later, in January 2020, he provided some medical records to Allstate f*or the first time*, demanding that Allstate pay the $250,000 UM policy limit within 15 days.  Plaintiff's medical records showed an injury with negligible medical expenses ($2,593) that healed without treatment.  Given these facts, Allstate needed more information, including an independent medical examination, to evaluate the high demand which was mainly for pain and suffering for the sternum fracture.  Because plaintiff had demanded UM arbitration, Allstate utilized discovery tools to get a full picture of the injury claim for the expert.  In June 2020, after completing discovery in the midst of a Pandemic, Allstate scheduled a medical examination with an orthopedic surgeon for July 2020.  Just before the medical exam, plaintiff produced a new medical report alleging that the fracture, which had now fully healed, was slightly displaced and would cause ongoing pain.  That same month, in July 2020, Allstate's retained orthopedic surgeon examined plaintiff, reviewed his medical records and concluded that the fracture fully healed slightly displaced and would not cause ongoing pain.  Allstate evaluated the claim and allowed for all the medical expenses and a large amount for

1  pain and suffering giving plaintiff the benefit of the doubt as to his pain.  By August

2  10, 2020, the claim settled for $125,000, just before the scheduled arbitration

3  hearing.  Allstate promptly paid the claim in full.

4      Plaintiff filed this lawsuit prematurely in February 2020 while the arbitration

5  was ongoing.  His lawsuit was meritless then, and it still is now.

6      ***The Law.***

7      **<u>Bad Faith</u>**.

8      There are several independent reasons why plaintiff's bad faith claim fails.

9      <u>First</u>, under the governing statute and the insurance policy, an agreement

10  between the parties or UM arbitration determines the amount of benefits that are

11  due.  Here, plaintiff sued Allstate for bad faith in February 2020 ***before*** the

12  completion of arbitration or settlement.  Because no policy benefits were due at the

13  time he filed suit, Allstate cannot be liable for bad faith (e.g., the unreasonable

14  withholding of policy benefits).

15      <u>Second</u>, because all benefits owed were paid within 30 days of settlement,

16  there can be no breach of contract and hence, no bad faith.

17      <u>Third</u>, the undisputed facts demonstrate that, during the short life of the claim

18  before it was settled, there were several genuine disputes over the value of the claim.

19  Any one of these genuine disputes, standing alone, bars plaintiff's bad faith claim.

20      ***Genuine Dispute 1:***  The large disparity between what plaintiff demanded

21  ($250,000) and the amount for which the claim was conclusively resolved

22  ($125,000) establishes, as a matter of law, that there was a genuine dispute over the

23  value of his claim.

24      ***Genuine Dispute 2:***  A genuine dispute also exists when an insurer relies on

25  an expert opinion in disputing the value of a claim.  Here, Allstate relied on a

26  medical expert to evaluate plaintiff's injuries, which further precludes bad faith

27  liability.

28

***Genuine Dispute 3:***  Because reasonable people will disagree on how to put a dollar figure on pain and suffering, general damages are inherently subject to genuine dispute.  The only dispute in this UM claim was the value of pain and suffering – plaintiff was demanding a multiple of about **96 times** his medical expenses for pain and suffering, and the claim settled for a multiple of about **48 times**.  The short-lived disagreement over the multiple for general damages, e.g., whether it was 96 times or 48 times the value of medical expenses, was also a genuine dispute that bars the bad faith claim.

<u>Fourth</u>, there is no evidence that Allstate unreasonably delayed payment of the UM claim.  Allstate settled the claim in the midst of a Pandemic <u>within six months</u> of plaintiff's presentation of the claim, <u>within one month</u> of obtaining plaintiff's new medical records showing that the fracture healed, and <u>within one month</u> of obtaining an independent medical examination.

**Derivative Meritless Claims.** Plaintiff tacked on three, additional meritless claims for intentional misrepresentation, fraud and negligent misrepresentation.  All three claims require a showing of a misrepresentation, justifiable reliance and resulting harm.  Here, there is <u>zero</u> evidence to support any requisite elements necessary to establish these fraud-based claims.  They should also be dismissed.

**Punitive Damages**.  Finally, regardless of how the Court rules on plaintiff's bad faith claim, it should grant partial summary judgment on his punitive damages claim.  There is no evidence – let alone clear and convincing evidence – of malice, oppression, or fraud by Allstate, or ratification by a managing agent.

## II.   UNDISPUTED FACTS

### A.   The Allstate Auto Policy

Allstate issued an auto policy to plaintiff Robert Ives and his husband, James Baker, that included a $250,000 UM policy limit.  The policy contains three pertinent provisions authorized by Insurance Code section 11580.2, the statute governing UM coverage:

> (i)   The amount of UM benefits due must be decided by agreement of the parties or by arbitration if the parties cannot reach an agreement.
>
> (ii)   The insured must submit to a medical examination at Allstate's request.
>
> (iii)   The insured must provide a deposition at Allstate's request.

(Ins. Code, §§ 11580.2(f), (h)(2), and (p)(3); Decl. of Mitchel Cross, ¶6; Ex. 1 [Auto Policy] of the Appendix of Exhibits ("AOE"), p. 30, p. 33. p. 44.)

### B.   <u>September-December 2019</u>: The Auto Accident and Plaintiff's Initial Four Month Delay; In December, Plaintiff Demands UM Arbitration Without Providing Any Medical Records.

On September 3, 2019, plaintiff was injured in an auto accident when his airbag deployed.  His injuries consisted primarily of a fractured sternum and arm lacerations. That same month, September 2019, plaintiff retained a lawyer (Eric Seuthe) who notified Allstate of his representation. (Cross decl., ¶12; Exhibit 3 at p. 239.)

In September 2019, Allstate contacted plaintiff's lawyer to ask for information regarding the accident and, by December 2019, Allstate had completed its investigation regarding liability and determined that the other driver was at fault and was not insured. (Cross decl., ¶¶15, 16; Ex. 3 at p. 239; Ex. 2, p. 86; Ex. 2, p. 86.)

Rather than providing Allstate with medical records or other information it could evaluate, in December 2019, plaintiff's lawyer instead sent a letter to Allstate demanding UM arbitration. (Cross decl., ¶18; Ex. 3, pp. 247.)

In December 2019, Allstate assigned the matter to arbitration counsel pursuant to plaintiff's UM arbitration demand. (Cross decl., ¶¶20-23; Ex. 3 p. 255, 257-261; Ex. 2, pp. 114-116; Ex. 2, p. 116 [12/18/19 at 1:47 pm entry].)

**C.** **December 2019-January 2020: Plaintiff Demands That Allstate Either Pay the $250,000 Policy Limit or Submit the Claim To Arbitration; Plaintiff Doesn't Provide Any Medical Records.**

On December 4, 2019, Plaintiff's lawyer wrote a letter to Allstate's adjuster. He enclosed a new November 27, 2019 letter that Allstate had never seen before. The November 27 letter stated was demanding UM arbitration.  Although plaintiff's lawyer said he enclosed medical records, there were no medical records enclosed. (Cross decl., ¶18; Ex. 3, pp. 246-7.)

The adjuster, Mitchel Cross, was on PTO from December 2 to 10, 2019 and then again on December 31, 2019 to January 6, 2020.  (Cross decl., ¶17, 18; Ex. 2, p. 110 [12/09/19]; Ex. 3, pp. 246-254 [Seuthe letters].)  When Cross left, he set his voicemail message to notify callers of the period he was going to be out and he left contact information for another adjuster tasked with handling claim-related matters in the interim.  On December 4, plaintiff's lawyer called Cross, listened to his message and ignored it.  Instead, between December 4 and 17, plaintiff's lawyer bombarded Cross with letters accusing him of ignoring the claim.  Moreover, none of these letters enclosed medical records or other evidence that would enable Allstate to evaluate the claim.  There was no justification offered for counsel's impatience and flood of letters especially where he had provided no medical records or other evidence that would enable Allstate to evaluate the claim. (Cross decl., ¶17, 18; Ex. 2, p. 110 [12/09/19]; Ex. 3, pp. 246-254 [Seuthe letters].)

By December 17, 2019, Allstate's adjuster had retained counsel to handle the UM arbitration.  Allstate's arbitration counsel immediately sought to confirm that the at-fault driver was uninsured to confirm that the claim was a UM claim. (Cross decl., ¶20-21; Ex. 3 p. 255, 257-261; Ex. 2, pp. 114-116.)

**D.**     <u>**January 2020-June 2020**</u>**: In the Midst of a Deadly Pandemic, the Parties Selected An Arbitrator, Conducted Discovery, and Allstate Scheduled A Medical Examination To Evaluate the Injury Claim; Plaintiff Finally Provided Medical Records to Allstate.**

On January 7, 2020, Allstate's counsel sent a letter to plaintiff's counsel. In the letter, she stated she was representing Allstate in the UM arbitration, she accepted plaintiff's demand for UM arbitration and asked counsel to contact her so that they could select an arbitrator.  Because Plaintiff's lawyer had provided no medical records or other evidence to support the claim, Allstate's counsel also served written discovery to obtain information regarding plaintiff's injuries, claimed damages and medical providers. (Gillian Mellon decl., ¶11; Exhibit 4, pp. 273-274 [January 7, 2020 letter].)

On January 13, 2020, Plaintiff's lawyer wrote to Allstate's counsel claiming that Allstate had not responded to his request for a list of arbitrators and his policy limit demand and he threatened to file a motion to compel UM arbitration.

On January 13, 2020, Allstate's counsel responded to plaintiff's lawyer, wherein she explained: ***"We have not been provided with any medical records to date, please respond to the served discovery in the timely manner so we can begin evaluating the claim. Again, we have no medical records, so please fill out the discovery as served to you. We wholly disagree that we have not allowed the arbitrator process to go forward. We're currently in the arbitration process. However, we have received no medical records nor police report to date. Please provide the requested materials..."*** (Gillian Mellon decl., ¶¶13, 15; Ex. 4, p. 277 [January 13, 2020 email].)

On January 14, 2020, Plaintiff's lawyer emailed a letter to Allstate's counsel and Allstate. In his letter, he stated he enclosed a copy of a demand for the $250,000 policy limit with medical records and bills attached.  He also stated that "the time to accept this [$250,000] demand expires tomorrow."  (Mellon decl., ¶15; Ex. 4, p.

-6-

278-279; Cross decl., ¶28.) Plaintiff's lawyer attached a letter to his January 14, 2020 letter that was dated December 31, 2019 demanding $250,000 policy limits and included medical records and bills. (*Id.*) *This was the first time that Allstate received medical records.*

At that time, on January 14, 2020, Allstate's adjuster received the $250,000 demand package with medical records and bills for the first time. The medical records showed that plaintiff went to the emergency room after the auto accident on September 3, 2019, and was diagnosed with a fractured sternum and lacerations on both lower arms.  The adjuster also observed that the records also showed that Mr. Ives was suffering from Parkinson's Disease.  Upon review of the medical documentation, the adjuster had concerns with additional neurological symptoms noted, primarily tremors because the records presented were unclear if there was any accident relatedness or if this was a pre-existing unrelated condition. The adjuster believed that additional information from discovery, deposition and an independent medical examination were needed to determine the extent, relation, and value associated with these noted issues.  The adjuster also observed that plaintiff had diagnostic studies that ruled out a head injury, and some follow up doctor appointments with his primary care physician, but no further medical treatment. The medical bills showed that plaintiff's medical expenses totaled **$2,593** ($24,578 was the billed amount, but Medicare paid most of the ER bill, which resulted in the "Howell" adjusted amount of $2,593.)[1]  The adjuster reviewed the records and determined that, based on the minimal medical expenses and no future treatment, there was insufficient documentation to support a $250,000 payment within

---

[1] A plaintiff's recovery for past medical expenses will be limited to the amounts actually paid or the reasonable value of the care provided, whichever is less. *Howell v. Hamilton Meats & Provisions, Inc.*, 52 Cal.4th 541 (2011). This rule applies to the situation – as in plaintiff's case – where the plaintiff's medical bills were paid by Medi-Cal or Medicare. *Luttrell v. Island Pacific Supermarkets, Inc.*, 215 Cal.App.4th 19 (2013).

1   plaintiff's 24-hour demand window.  Consequently, he sought to obtain (i)

2   plaintiff's own assessment of his ongoing pain through his deposition and (ii) an

3   independent medical examination from an orthopedic specialist. (Cross decl., ¶29;

4   Ex. 13, pp. 516; Ex. 6 (evaluation documents); Ex. 13 (medical records and

5   December 31, 2019 policy limits demand); Medicare adjustment at Ex. 6 (evaluation

6   documents), at p. 418.)

7   　　　　On February 5, 2020, plaintiff's lawyer served the Complaint, *that is the*

8   *current operative Complaint in this Action*, on Allstate's counsel and threatened her

9   that "I will [not] have any more communication with you until I take your

10   deposition." (Cross decl., ¶32; Mellon, ¶20; Ex. 4, p. 295.)

11   　　　　In February 2020, Allstate received responses to interrogatories wherein

12   plaintiff alleged that: (i) he had medical expenses totaling $25,673 – mostly for an

13   ER visit on September 3, 2019 – that were paid by Medicare, (ii) he had no further

14   medical treatment or expenses, (iii) he sustained a loss of earnings of approximately

15   $3,200 (with no supporting documentation); and (iv) he had ongoing pain and

16   difficulty carrying heavy items. (Cross decl., ¶33; Ex. 10.)

17   　　　　On March 4, 2020, plaintiff served written discovery on Allstate. On March 9,

18   2020, Allstate re-assigned the arbitration matter to new counsel, Calendo Puckett

19   Sheedy LLP.

20   　　　　In early March 11, 2020, plaintiff's lawyer noticed the deposition of an

21   Allstate PMK regarding Allstate's handling of the subject UM claim.  Because

22   claims handling was not an issue in the UM arbitration (the arbitrator makes

23   findings on liability and damages, not bad faith claims) – the deposition notice was

24   improper. (Klein decl., ¶6; Badawi decl., ¶3; Ex. 15.)

25   　　　　As of April 2020, plaintiff's lawyer was still demanding the policy limit (e.g.,

26   on April 8, he served a 998 offer for $249,999.99.) (Klein decl., ¶11; Ex. 4, p. 336.)

27   　　　　By April 2, 2020, the parties selected an arbitrator for the arbitration hearing

28   at ADR, Services. (Klein decl., ¶10; Ex. 4, p. 306.) On May 5, 2020, the parties

stipulated to set the arbitration for August 2020. (Klein decl., ¶13; Ex. 4, p. 322-324.)

On May 27, 2020, Allstate's counsel took plaintiff's deposition. (Klein decl., ¶14; Cross decl., ¶40;  Exhibit 9.)  In the deposition, plaintiff stated that, at the emergency room on the day of the accident, he was told that he had a fractured sternum and that there was not much that they could do for him; he claimed he was still experiencing daily pain in his chest and ribs which was worse with exertion; he stated that he had no appointments to see any other doctors; and he said he last saw his doctor one year earlier. (*Id.*)

> **E.** **July-August 2020: The Claim Settled for $125,000 Shortly After Allstate Received The Medical Expert's Opinion; Allstate Gave Plaintiff the Benefit of the Doubt as To His Claim of Ongoing Pain.**

On July 1, 2020, Plaintiff's lawyer noticed the deposition of Allstate's independent medical expert, Dr. James Kayvantar, for August 3, 2020.

On July 10, 2020, plaintiff's lawyer sent Allstate a new CT scan of plaintiff's sternum that was dated July 2020. On July 16, 2020, plaintiff's lawyer sent Allstate a new medical report from a doctor (Dr. Tauber) which was dated July 14, 2020.  In his July 14, 2020 report, the doctor recommended against surgery or any other procedure for the sternum fracture, and concluded that plaintiff's sternum fracture healed in a "nonunion" way and that he would continue to have ongoing pain and limitations with activities, and he did not believe any other treatment would resolve the issue. (Klein decl., ¶¶18-21; Ex. 4, p. 336; Ex. 4, pp. 337; Ex. 4, p. 338; Ex. 4, p. 344; Klein decl., ¶¶22-24; Exhibit 4, pp. 345-347; Ex. 4, pp. 348-349.)

On July 17, 2020, Allstate's IME doctor, Dr. James Kayvanfar, M.D., an orthopedic and spinal surgeon examined plaintiff and reviewed his medical records and other records including plaintiff's deposition.  After the examination, he provided his opinions to Allstate verbally and later in reports.  Dr. Kayvanfar concluded that plaintiff was not in need of any further treatment related to the

accident, plaintiff sustained a minimally displaced sternum fracture in the accident which likely healed and was asymptomatic within 3-4 months from the date of the accident with excellent prognosis and no residuals, and plaintiff also sustained minor soft tissue contusions from the seatbelt and from an air bag deployments which likely healed within 6-8 weeks after the date of injury with no residuals. (Cross decl., ¶47; Ex. 5 (Dr. Kayvanfar's reports).)

In July 2020, Allstate's adjuster evaluated the claim allowing for (i) all the medical expenses (which hadn't changed much since January ($2,593) except for the new July CT scan and Tauber report which were allowed for), (ii) loss of earnings which was unsubstantiated, and (iii) extensive pain and suffering.  Allstate evaluated the claim at a range with the high-end at $125,000 by increasing general damages to give plaintiff the benefit of the doubt as to his claimed ongoing pain, his arm abrasions, and to allot for the delayed and displaced healing of the sternum fracture due to age-related complications and pre-existing conditions. (Cross decl., ¶50; Ex. 2, pp. 208-220 to Allstate's AOE (and pp. 192-195 for earlier July 2020 evaluation); Ex. 6, pp. 395-419 [medical bill review and general damages tools]; Exhibit 13 [medical records].)

On August 7, 2020, Allstate and plaintiff agreed to a settlement of $125,000 for plaintiff's UM claim. (Klein decl., ¶¶28-29; Ex. 4, at p. 362 [August 7, 2020 letter confirming the settlement]; Ex. 4, pp. 364-366.)

On August 13, 2020, Allstate issued the $125,000 check. (Cross decl., ¶52; Ex. 2, p. 229.)


## III. PLAINTIFF'S BAD FAITH CLAIMS FAILS BECAUSE THERE WERE NO BENEFITS DUE UNDER THE CONTRACT.

Under the governing statute and the insurance policy, the amount payable under the UM coverage is determined by *either* an agreement between the parties or by UM arbitration. Insurance Code section 11580.2, which governs UM claims,

1  mandates that any dispute over the value of a UM claim be resolved by arbitration

2  rather than by the courts:

> [T]he determination as to whether the insured shall be legally entitled
> to recover damages, and if so entitled, the amount thereof, shall be
> made by agreement between the insured and the insurer or, in the event
> of disagreement, by arbitration.

6  Ins. Code, § 11580.2(f); *Rudd v. California Casually Gen. Ins. Co.* (1990) 219

7  Cal.App.3d 948 (holding that the arbitration obligation applies to both UM and UIM

8  claims); *United Services Auto. Assn. v. Superior Court* (1990) 221 Cal.App.3d 79,

9  83 (same).

10      The Policy language substantially mirrors Ins. Code §11580.2(f) and

11  provides: "Part VI Uninsured Motorists Insurance Coverage SS …The right to

12  benefits and **the amount payable will be decided by agreement between the**

13  **insured person and Allstate**. If an agreement can't be reached, the decision will be

14  made by arbitration." [emphasis added.]

15      Consequently, both the governing statute and the insurance policy require (i)

16  a settlement or (ii) completion of UM arbitration *before* plaintiff can state a claim

17  for breach of contract or bad faith.  Here, plaintiff sued Allstate for bad faith *before*

18  the claim settled.  Because no policy benefits were due at that time, Allstate cannot

19  be liable for bad faith (e.g., the unreasonable withholding of benefits due).

20      As a matter of law, the parties are required to complete the contractual

21  arbitration process before any action at law:

> Contract provisions for the extrajudicial settlement of disputes are
> binding on the parties whether the arrangement is technically a
> common-law or statutory arbitration or something akin. [] Mandatory
> contractual remedies must be exhausted before resort to the courts.

25  *A. Teichert & Son, Inc. v. State* (1965) 238 Cal.App.2d 736, 746 [48 Cal.Rptr. 225,

26  232] (citations omitted).

27      Insurance contracts are no exception to this rule.  Time and again, California

28  courts have rejected attempts by insureds to bypass contractual dispute resolution

mechanisms.  *See Appalachian Insurance Co. v. Rivcom Corp.* (1982) 130 Cal.App.3d 818 [182 Cal.Rptr. 11] ("until the amount of loss is fixed (under the Appraisal Clause) no one is in a position to evaluate the bad faith claim"); *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886 [112 Cal.Rptr.2d 304] (parties must resort to appraisal under policy before filing suit); *Enger v. Allstate Ins. Co.* (E.D. Cal. 2009) 682 F.Supp.2d 1094 aff'd, (9th Cir. 2010) 407 Fed.Appx. 191 (same); *Goldberg v. State Farm Fire & Cas.* (C.D. Cal., Apr. 5, 2002, CV 01-11193 LGB (EX)) 2002 WL 768893 aff'd, *Goldberg v. State Farm Fire and Cas. Co.* (9th Cir. 2004) 88 Fed.Appx. 197 (same); *Garner v. State Farm Mut. Auto. Ins. Co.* (N.D. Cal., June 30, 2008, C 08-1365 CW) 2008 WL 2620900 (same).

Because plaintiff had not exhausted that contractual dispute resolution mechanism (e.g., arbitration) at the time he filed this Action, his claim that Allstate unreasonably withheld benefits due fails as a matter of law.

Here, in February 2020, when plaintiff filed this Action, it is undisputed that his UM claim hadn't proceeded to settlement or arbitration.  That admission is equally fatal to his bad faith claim.  *Interinsurance Exchange v. Superior Court* (1989) 213 Cal.App.3d 1439 is on point.  There, the Court of Appeal held that (i) an uninsured motorist insurer has no liability to its insured "absent liability of the uninsured motorist to him," and (ii) the uninsured motorist's liability must be determined through arbitration pursuant to section 11580.2(f).  *Id.* at p. 1443. Consequently, an insured who contends an insurer has improperly withheld uninsured motorist benefits must:

> allege that his entitlement to damages, and the amount thereof, have been determined in arbitration proceedings with the insurer, as required by subdivision (f) of section 11580.2. *Id.*

Because there was no breach of contract, there was also no bad faith.  There can be no claim for bad faith absent a viable claim for breach of contract.

*Gunderson v. Fire Ins. Exch.* (1995) 37 Cal. App. 4th 1106, 1119.  California courts have repeatedly reiterated that same simple principle: there can be no bad faith liability unless the insurer has withheld policy benefits due.  *Love v. Fire Ins. Exch.* (1990) 221 Cal.App.3d 1136, 1153 ("a bad faith claim cannot be maintained unless policy benefits are due."); *Waller v. Truck Ins. Exchange* (1995) 11 Cal. 4th 1, 36; *Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452, 462; *Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574; *Rattan v. United Services Auto. Ass'n* (2000) 84 Cal.App.4th 715, 721-723.

In short, because plaintiff cannot establish that any UM policy benefits were due when he filed this Action – due to the fact that no settlement or UM arbitration had yet occurred – his bad faith claim fails.

## IV.   PLAINTIFF'S BAD FAITH CLAIM ALSO FAILS BECAUSE ALLSTATE TIMELY PAID ALL  BENEFITS THAT WERE DUE.

Because Allstate paid the $125,000 settlement, Allstate paid all benefits due under the contract (see Section III above.)  There can be no breach of contract where an insurer pays all benefits due.  *See, e.g., Everett v. State Farm General Ins. Co.*, 162 Cal. App. 4th 649, 660 (2008) ("Everett's policy expressly provides that State Farm will pay the reasonable cost to replace the damaged property up to the stated policy limits.  Because State Farm did just that, Everett's assertion that State Farm failed to pay to replace her home does not support a claim for breach of contract."); *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F. Supp. 911, 917-18 (C.D. Cal. 1994) (where insurer initially denied uninsured motorist claim, holding that insurer could not state breach of contract claim because the insurer paid the limits of liability under the policy); *Maxwell v. Fire Ins. Exch.*, 60 Cal. App. 4th 1446, 1449 (1998) (holding that there can be no breach of contract where all contractual benefits have been paid, even if they were paid late); *see also Mason v. Allstate Ins. Co.*, 2014 WL 212245, *2-3 & n.2  (C.D. Cal. Jan. 6, 2014) (holding that a "breach of

contract claim seeking additional benefits under an insurance policy is not viable following the arbitration of that claim" and "the Court does not find that the fact that Plaintiff was compelled to arbitrate his claim gives rise to a claim for breach of contract").

## V.   PLAINTIFF CANNOT STATE A CLAIM FOR BAD FAITH BECAUSE GENUINE DISPUTES EXISTED ABOUT HIS INSURANCE CLAIM

### A.   The Standards for Evaluating a Bad Faith Claim

Even if an insurance company withholds policy benefits that it is ultimately required to pay, that does not mean it breached the implied covenant of good faith and fair dealing. *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346-47 (2001); *Hanson v. Prudential Ins. Co.*, 783 F.2d 762, 766 (9th Cir. 1985). The implied covenant requires insurers to be reasonable, not flawless or prescient. *Chateau Chamberay*, 90 Cal. App. 4th at 346-47. Therefore, to establish a breach of the implied covenant, a plaintiff must show that the insurer withheld benefits unreasonably and without proper cause. *Guebara v. Allstate Ins. Co.*, 237 F. 3d 987, 992 (9th Cir. 2001); *Rappaport-Scott v. Interinsurance Exch. of the Automobile Club*, 146 Cal. App. 4th 831, 837 (2007).

#### i.   Mistakes Are Not Enough To Show Unreasonableness.

"Bad faith implies dishonesty, fraud and concealment." *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 876 (1973). Thus, "a mere difference or a mere mistake in judgment is not bad faith. People disagree all the time. A mistake, a difference of opinion, a different judgment that an individual might have, that isn't bad faith; there has to be something more. The conduct has to be so unreasonable, so without reason, that it is bad faith." *Notrica v. State Compensation Ins. Fund*, 70 Cal. App. 4th 911, 931 (1999).

1         **ii.**     **It Is Not Unreasonable To Withhold Payment Where There**

2                 **Is A "Genuine Dispute" About The Value Of The Claim.**

3       Withholding insurance benefits is not unreasonable where a legitimate

4 question – in legal terms, a "genuine issue" or "genuine dispute" – exists regarding

5 the amount of payment due. *Guebara*, 237 F. 3d at 992; *Lunsford v. American*

6 *Guarantee & Liability Ins. Co.*, 18 F. 3d 653, 656 (9th Cir. 1994). "[W]here there is

7 a genuine issue as to the insurer's liability under the policy for the claim asserted by

8 the insured, there can be no bad faith liability imposed on the insurer for advancing

9 its side of that dispute." *Chateau Chamberay*, 90 Cal. App. 4th at 347; *Franceschi v.*

10 *American Motorists Ins. Co.*, 852 F. 2d 1217, 1220 (9th Cir. Cal. 1988) ("a court can

11 conclude as a matter of law that an insurer's denial of a claim is not unreasonable,

12 even if the court concludes the claim is payable under the policy terms, so long as

13 there existed a genuine issue as the insurer's liability").

14       Establishing a "genuine dispute" does not require a showing that the

15 insurance company was clearly right, or even that the insurance company's position

16 was "more" correct than the insured's position.  Instead, a "genuine dispute" simply

17 means that reasonable minds could differ about the value of the claim.  *Rappaport-*

18 *Scott*, 146 Cal. App. 4th at 839; *Chateau Chamberay*, 90 Cal. App. 4th at 350-51.

19       Whether a genuine dispute exists can and should be decided on summary

20 judgment.  *Guebara*, 237 F. 3d at 992 ("Under California law, a bad faith claim can

21 be dismissed on summary judgment if the defendant can show that there was a

22 genuine dispute as to coverage."); *see also Franceschi*, 852 F. 2d at 1220, *Chateau*

23 *Chamberay*, 90 Cal. App. 4th at 347.  In deciding whether there was a genuine

24 dispute, "the court does not decide which party is 'right' as to the disputed matter,

25 but only that a reasonable and legitimate dispute actually existed." *Chateau*

26 *Chamberay*, 90 Cal. App. 4th at 347.

27

28

**B.     The Existence of Three, Independent Genuine Disputes Bars Plaintiff's Bad Faith Claim.**

    **i.     <u>Genuine Dispute 1</u>: The disparity between plaintiff's demand ($250,000) and the settlement amount ($125,000) confirms the existence of a genuine dispute.**

The proof of this genuine dispute is in the pudding.  Here, plaintiff settled his UM claim for half of what he previously claimed his *injuries* were worth.  As a matter of law, this established a genuine dispute over the value of his claim.

Under the Allstate policy and the statute (Insurance Code §11580.2), the parties' agreement to settle a UM claim is the equivalent of an arbitration award for purposes of establishing the amount due under the contract.  Under the governing case law, "[a] genuine dispute exists when an arbitrator awards substantially lower damages than Plaintiff claims."  *Maynard v. State Farm Mut. Auto. Ins. Co,* 499 F. Supp.2d 1154, 1162 (C.D. Cal. 2007), citing *Rappaport-Scott*, 146 Cal. App. 4th at 830.  In *Maynard*, the plaintiff offered to settle his UIM claim for the policy limit of $85,000. State Farm counter-offered for $5,000, so the claim went to arbitration. The arbitrator awarded $63,005.  The District Court granted summary judgment for State Farm, ruling that the disparity between what the plaintiff claimed and what the arbitrator awarded demonstrated the existence of a genuine dispute. *Id.*

Similarly, in *Rappaport-Scott*, the plaintiff demanded the $75,000 UIM limit, the insurer offered $7,000, and the UM arbitrator awarded $63,000 in damages. The Court of Appeal ruled "as a matter of law, that a genuine dispute existed as to the amount payable on the claim" and affirmed the dismissal of the bad faith claim. 146 Cal. App. 4th at 833-834.  *See also Keshish v. Allstate Ins. Co.,* 959 F. Supp. 2d. 1226, 1237 (C.D. Cal. 2013) (granting summary judgment because appraisal award 47 percent lower than the insureds' demand showed that there was a genuine dispute); *Mason v. Allstate Ins. Co.*, 2014 WL 212245 at *5 (C.D. Cal. Jan. 6, 2014) (dismissing bad faith claim at pleading stage because genuine dispute existed where

(i) the insured demanded $250,000, (ii) the insurer offered $55,453, and (iii) the UIM arbitrator awarded $124,277).

Here, the parties reached an agreement to settle the claim.  Because the parties' agreement is the equivalent of an arbitration award for purposes of establishing the amount due under the contract, the fact that plaintiff settled his UM claim for an amount that was far below what he claimed (100% less than his demand) establishes that there was a genuine dispute, thus barring bad faith.

>    ii.    **Genuine Dispute 2: Allstate's reliance on the opinions of an independent expert precludes plaintiff's bad faith claim.**

Another classic example of a genuine dispute is when the insured and the insurer each rely on experts who disagree about the extent or value of the claim. The insurer is entitled to rely on its expert without incurring bad faith liability. *Guebara*, 237 F.3d at 993 ("The 'genuine dispute' doctrine may be applied where the insurer denied a claim based on the opinions of experts."), *quoting Fraley v. Allstate Ins. Co.,* 81 Cal. App. 4th 1282, 1292 (2000)); *Adams v. GEICO Ins. Co.*, 187 F. Supp. 2d 1207, 1215 (C.D. Cal. 2002).

In particular, an insurer is entitled to rely on expert medical opinion. *Maynard*, 499 F. Supp. 2d at 1163 (insurer "entitled to rely on its orthopedic surgeon's report to dispute Plaintiff's claim"); *Badell v. Celtic Life Ins. Co.,* 159 F. Supp. 2d 1186, 1193 (N.D. Cal. 2001); *Cardiner v. Provident Life and Accident Ins. Co.*, 158 F. Supp. 2d 1088, 1102 (C.D. Cal. 2001).

Applying California law, courts routinely dismiss bad faith claims at the summary stage where, as here, the insurance company's decision was based on the opinion of an expert.  *See*, *e.g.*, *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 994-95 (9th Cir. 2001) (arson expert); *Cardiner v. Provident Life and Accident Ins. Co.,* 158 F. Supp. 2d 1088, 1102 (C.D. Cal. 2001) (medical expert); *Adams v. Allstate Ins. Co.,* 187 F. Supp. 2d 1207, 1215 (C.D. Cal. 2002) (construction expert); *Allstate Ins. Co. v. Madan,* 889 F. Supp. 374, 380 (C.D. Cal. 1995) (arson expert);

*Badell v. Celtic Life Ins. Co.*, 1193 (N.D. Cal. 2001) (medical expert); *see also Maynard,* 499 F. Supp. 2d at 1163 (medical expert).  This is so even where (i) the insured offers contrary expert opinions and (ii) the trier of fact ultimately resolves the conflicting expert opinions in favor of the insured.  *Chateau Chamberay*, 90 Cal. App. 4th at 349-51; *Fraley*, 81 Cal. App. 4th at 1293.[2]

Reliance on an expert is particularly useful where, as here, there were factual questions regarding the nature and extent of the insured's injuries and lack of documentation corroborating the insured's high demand. *See Maynard v. State Farm Mut. Auto. Ins. Co.,* 499 F. Supp. 2d 1154, 1162-63 (C.D. Cal. 2007).

Here, Allstate had a board-certified orthopedic surgeon evaluate plaintiff's injury claim. Dr. Kayvanfar concluded that plaintiff was not in need of any further treatment related to the accident, plaintiff sustained a minimally displaced sternum fracture in the accident which likely healed and was asymptomatic within 3-4 months from the date of the accident with excellent prognosis and no residuals, and plaintiff also sustained minor soft tissue contusions from the seatbelt and from an air bag deployments which likely healed within 6-8 weeks after the date of injury with no residuals.  Allstate relied on this opinion in evaluating the claim and settling for $125,000.  Allstate's reliance on a medical expert further establishes that there was a genuine dispute as to the value of the claim that precludes the bad faith claim.

### iii.   Genuine Dispute 3: There was an inherent genuine dispute over general damages for pain and suffering.

Plaintiff's UM claim was mainly for general damages for pain and suffering, resulting from his fractured sternum.  Plaintiff's medical expenses were $2,593

---

[2] Even though *Fraley* and *Keshish* involved an appraisal award, the cases are equally applicable to arbitration awards.  *See Klubnikin v. California Fair Plan Assn.*, 84 Cal. App. 3d 393, 398 (1978); *Devonwood Condominium Owners Ass'n v. Farmers Ins. Exchange*, 162 Cal. App. 4th 1498, 1505 (2008) ("Appraisal award proceedings are subject to the arbitration provisions outlined in the California Arbitration Act, Code of Civil Procedure section 1280 *et seq.*").

1   primarily for an emergency room visit right after the accident.  Plaintiff did not

2   require any further medical treatment, as the doctors determined that the sternum

3   fracture would heal on its own.  Plaintiff's demand for $250,000 was therefore

4   mostly for his pain and suffering from the sternum fracture.

5          Putting a dollar value on pain and suffering is one of the most difficult and

6   least precise tasks in the law.  "Translating pain and anguish into dollars can, at best,

7   be only an arbitrary allowance, and not a process of measurement."  *Beagle v.*

8   *Vasold*, 65 Cal. 2d 166, 172 (1966).  *Accord Capelouto v. Kaiser Found. Hosp.*, 7

9   Cal. 3d 889, 892 (1972) (pain and suffering "can be translated into monetary loss

10  only with great difficulty"); *Greater Westchester Homeowners Assn. v. County of*

11  *Los Angeles*, 26 Cal. 3d 86, 103 (1979) (damages for pain and suffering "are

12  inherently nonpecuniary, unliquidated and not readily subject to precise

13  calculation.").

14         Thus, by its very nature, the value of general damages is subject to genuine

15  dispute.  "The amount to be awarded [for pain and suffering] is '*a matter on which*

16  *there legitimately may be a wide difference of opinion*.'" *Seffert v. Los Angeles*

17  *Transit Lines*, 56 Cal. 2d 498, 508 (1961) (citation omitted).

18         As a result, courts in UIM cases have specifically held that insurers cannot be

19  liable for bad faith for offering less for general damages than what an insured

20  demands or eventually recovers.  For example, in *Leo v. State Farm Mut. Auto. Ins.*

21  *Co.*, 939 F. Supp. 1186 (E.D. Pa. 1996), the insurer offered $25,000 for pain and

22  suffering, but the arbitrator awarded $75,000.  In a later bad faith suit, the court

23  noted that pain and suffering is inherently "subjective in nature," therefore held that

24  the insurer's offer was reasonable as a matter of law, and granted summary

25  judgment for the insurer.  *Id.* at 1191.

26         Plaintiff was demanding a multiple of about 96 times his medical expenses

27  for pain and suffering.  The claim ultimately settled for a multiple of about 48 times

28  the medical expenses for pain and suffering.  This disagreement over the multiple

-19-

1  for general damages, e.g., whether it was 96 times or 48 times the medical expenses,

2  was also a genuine dispute that bars the bad faith claim.  Thus, the dispute over the

3  value of general damages was, by its very nature, genuine.  This is another reason

4  why Allstate cannot be liable for bad faith.

5

6  **VI.  ALLSTATE DID NOT UNREASONABLY DELAY.**

7       The crux of plaintiff's bad faith claim – that Allstate had no reasonable basis

8  to dispute plaintiff's $250,000 demand – is disposed of above.  In an abundance of

9  caution, Allstate also addresses the suggestion in the Complaint that it engaged in

10  unreasonable delay.  Any such argument fails for several reasons.

11       <u>First</u>, plaintiff waited four months to submit his UM claim/$250,000 demand

12  (from September 2019 to January 2020).

13       <u>Second</u>, in January 2020 when Allstate finally received some medical records

14  for the first time, Allstate was entitled by law to a reasonable time to investigate.

15  An insurer is not obligated to pay a claim "until it [can] find out on its own, to a

16  measure of certainty," that the benefits are owed.  *Blake v. Aetna Life Ins. Co.,* 99

17  Cal.App.3d 901, 924 (1979).  Thus, "[t]here can be no 'unreasonable delay' until the

18  insurer receives adequate information to process the claim and reach an agreement

19  with the insured."  *Globe Indem. Co. v. Superior Court*, 6 Cal.App.4th 725, 731

20  (1992); *accord Maynard*, 499 F.Supp.2d at 1160 ("delay while the insurer seeks

21  information and investigates the insured's claim" does not give rise to liability for

22  bad faith); *Maynard*, 499 F.Supp.2d at 1160.  Here, Allstate moved promptly by (i)

23  retaining a medical expert to conduct an independent medical examination in the

24  midst of a deadly Pandemic, (ii) promptly serving discovery and taking plaintiff's

25  deposition, and (iii) settling the claim within six months of receiving medical

26  records, two months of taking plaintiff's deposition, and one month of receiving an

27  expert medical report.

28

Third, and more generally, the undisputed facts as shown above demonstrate that Allstate had a genuine basis to agree to plaintiff's demand to arbitrate the amount due.  Consequently, the time spent on discovery and arbitration cannot constitute an unreasonable delay.  Discovery and arbitration are precisely what the Legislature and the parties contemplated in the case of disagreement, so plaintiff cannot complain of the time it took for that process to unfold. Moreover, plaintiff insisted on the parties following formal arbitration procedures (including the statutory notice requirements for each discovery procedure) when he demanded arbitration before giving Allstate a single piece of evidence to evaluate the claim.

## VII.   THE MERITLESS DERIVATIVE CLAIMS

Plaintiff's derivative claims – second cause of action for fraud, third cause of action for intentional misrepresentation, and fourth cause of action for negligent misrepresentation – also lack merit.

The elements of a fraud claim are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (e) resulting damage.  *Lazar v. Superior Court,* 12 Cal.4th 631, 638 (1996).  Negligent misrepresentation also requires proof of (1) a misrepresentation without reasonable ground for believing it to be true, (2) intent to induce reliance, (3) justifiable reliance, and (4) resulting damage.  *Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices*, 207 Cal. App. 3d 1277, 1285 (1989).

The undisputed facts show that Allstate fully paid plaintiff's UM claim within six months of his submission of medical records, within two months of his deposition, and within one month of the independent medical examination.  Plaintiff was represented by counsel when he agreed to settle his claim for $125,000.  All the evidence shows that Allstate handled the claim fairly, expeditiously and reasonably. There is simply no evidence of a misrepresentation, justifiable reliance, and

resulting harm, and therefore the fraud, intentional misrepresentation and negligent misrepresentation claims also lack merit.

## VIII.  THE PUNITIVE DAMAGES CLAIM FAILS AS A MATTER OF LAW

Regardless of how the Court rules on plaintiff's bad faith claim, it should eliminate his claim for punitive damages because he has no evidence to support it.

Several standards governing punitive damages apply here.  First, to recover punitive damages, plaintiff must provide clear and convincing evidence of fraud, oppression or malice.  Cal. Civ. Code § 3294.

"Fraud" is "an intentional misrepresentation, deceit or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."  Cal. Civ. Code § 3294(c)(3).

"Oppression" means "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of the person's rights."  Cal. Civ. Code § 3294(c)(2).  "Despicable conduct" is conduct "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people."  *Stewart v. Truck Ins. Exch*, 17 Cal. App. 4th 468, 483 n. 29 (1993).

"Malice" means either (1) "conduct which is intended by the defendant to cause injury to the plaintiff or (2) "despicable conduct which is carried on by the defendant with a willful and conscious disregard for the rights or safety of others." Cal. Civ. Code § 3294(c)(1).  "Evil motive is the central element of the malice which justifies an exemplary award."  *O'Hara v. Western Seven*, 75 Cal. App. 3d 798, 806 (1977).

Second, on summary judgment, the court must test a punitive damages claim under the heightened "clear and convincing evidence" standard.  *Anderson v. Liberty Lobby Inc.*, 411 U.S. 242, 254 (1986) ("in ruling on a motion for summary

judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden"); *Board of Trustees of Univ. of Illinois v. Insurance Corp. of Ireland*, 969 F. 2d 329, 332 (7th Cir. 1992) (applying "clear and convincing" standard on motion for summary judgment).  Thus, to survive summary judgment, plaintiff must present evidence for punitive damages that is strong enough to command "the unhesitating assent of every reasonable mind." *In re Angelia P.*, 28 Cal. 3d 908, 919 (1981).

Third, "the evidence required to support an award of punitive damages for breach of the implied covenant of good faith and fair dealing is 'of a different dimension' from that needed to support a finding of bad faith." *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg.*, 78 Cal. App. 4th 847, 909-10 (2000) (citation omitted).  Evidence of bad faith - without more - does not support a claim for punitive damages.  *Beck v. State Farm*, 54 Cal. App. 3d 347, 355-56 (1976); *Stewart*, 17 Cal. App. 4th at 483.

Fourth, the evidence must not be merely consistent with the theory of oppression, fraud, or malice.  Rather, plaintiff must produce evidence that is inconsistent with any other explanation: "some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such non-iniquitous human failing." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287-88 n. 14 (1994).

Finally, a plaintiff seeking punitive damages against a corporation must show by clear and convincing evidence that the act constituting malice or oppression was committed or ratified by an "officer, director, or managing agent." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 163 (2000); *White v. Ultramar, Inc.*, 21 Cal. 4th 563 (1999).

Here, plaintiff cannot meet these strict standards.  There is no evidence - much less clear and convincing evidence - of malice, oppression, fraud, or

ratification by a managing agent.  Therefore, the Court should grant summary judgment on the claim for punitive damages.

## IX.    CONCLUSION

Allstate respectfully requests that the Court grant full summary judgment in its favor, or alternatively, partial summary judgment of the intentional misrepresentation, fraud and negligent misrepresentation claims and the claim for punitive damages.

Dated:  January 7, 2021            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    _____
                      */s/ Suzanne Y. Badawi*
                      SUZANNE Y. BADAWI

                      Attorneys for Defendant
              ALLSTATE NORTHBROOK INDEMNITY
              COMPANY (erroneously sued as "ALLSTATE
                      INSURANCE COMPANY")