UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT WAYNE IVES,<br><br>               Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>               Defendant. | Case No. 2:20-cv-02505-AB-AGRx<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [45]** |

Before the Court is Defendant Allstate Insurance Company's ("Defendant" or "Allstate") Motion for Summary Judgment. (Dkt. No. 45.) Plaintiff Robert Wayne Ives ("Plaintiff") opposed and Defendant replied. (*See* Dkt. Nos. 47, 49.) The Court held oral argument on February 12, 2021 and took this matter under submission. After considering all the parties' arguments, the Court **GRANTS** Defendant's Motion for Summary Judgment.

///

///

///

1.

## I. BACKGROUND

The following facts are undisputed.[1] Defendant issued an auto policy to Plaintiff that included a $250,000 uninsured motorist ("UM") policy limit. (Dkt. No. 45-2, Defendant's Statement of Undisputed Material Facts ("SUF") 1.) The policy contains the following three provisions which are authorized by Insurance Code section 11580.2:

    (i) The amount of UM benefits due must be decided by agreement of the parties or by arbitration if the parties cannot reach an agreement.
    (ii) The insured must submit to a medical examination at Allstate's request.
    (iii) The insured must provide a deposition at Allstate's request.

(*Id.*)

On September 3, 2019, Plaintiff was injured during an automobile accident when his airbag deployed. (SUF 2.) That same month, Plaintiff retained attorney Eric Seuthe who notified Defendant of his representation. (*Id.*) Defendant contacted Mr. Seuthe to ask for information regarding the accident, and in December 2019, Defendant completed its intial investigation and determined that the other driver was at fault and had not been insured at the time of the accident. (SUF 3.) Also in December, Mr. Seuthe wrote Defendant and demanded UM arbitration, (SUF 4), and Defendant assigned the matter to arbitration counsel pursuant to the demand. (SUF 6.)

On December 4, 2019, Mr. Seuthe emailed Defendant's adjuster and enclosed a letter from November 27, 2019 which demanded arbitration. (Cross Decl., ¶ 18; Exh. 3 at 246-47.) There were no medical records enclosed. (*Id.*) The adjuster was on paid time off ("PTO") from December 2 to 10, 2019 and December 31, 2019 to January 6, 2020. (Cross Decl., ¶¶ 17, 18; Exh. 2 at 110; Exh. 3 at 246-54.) The

---

[1] Plaintiff did not object to Defendant's Statement of Undisputed Facts but instead provided additional facts in his own Statement of Undisputed Facts. (*See* Dkt. No. 47-2.)

2.

adjuster's voicemail notified callers that the adjuster was out-of-office and provided the contact information for another adjuster who was handling claim-related matters. (Cross Decl., Exh. 2 at 110; Exh. 3 at 246-54.) Mr. Seuthe called and wrote the adjuster who was on PTO numerous times in December 2019 and stated that Defendant was ignoring his client's claim. (*Id.*)

On January 7, 2020, Defendant's counsel wrote Plaintiff's counsel to advise that she represented Defendant in the UM Arbitration and that she accepted Plaintiff's demand for arbitration; she requested Plaintiff's lawyer to contact her so they could select an arbitrator. (SUF 7.) Defendant also served written discovery to obtain information regarding Plaintiff's injuries, damages asserted, and medical care. (*Id.*) On January 13, 2020, Mr. Seuthe wrote to Defendant's counsel asserting that Defendant had not responded to a list of arbitrators and policy limit demand and that he was going to file a motion to compel UM arbitration. The same day, Defendant's counsel responded asking for medical records and the police record so Defendant could assess the claim. (SUF 8.)

On January 14, 2020, Mr. Seuthe emailed Defendant and enclosed a demand for the $250,000 policy limit with medical records and bills included; Mr. Seuthe told Defendant that the "the time to accept [the] demand expires tomorrow." (SUF 9.) Attached to the January 14, 2020 letter was a second letter dated December 31, 2019 demanding $250,000 policy limits and included medical records and bills. (*Id.*) Defendant had never received medical records prior to January 14, 2020. (*Id.*)

That same day, Defendant's adjuster received the $250,000 demand with the medical records and bills. (SUF 9.) The medical records indicated that Plaintiff suffered from Parkinson's Disease and the adjuster believed more information was necessary to determine whether the tremors presented by Plaintiff were a result of the accident or from preexisting conditions. (SUF 12.) The adjuster determined that, in light of Plaintiff's total medical bills of $2,593, that at that time, there was insufficient documentation to support Plaintiff's demand for the $250,000 policy limits. (*Id.*)

3.

Defendant's adjuster then sought to obtain Plaintiff's deposition to ascertain ongoing pain and an independent medical examination from an orthopedic specialist. (*Id.*)

On February 5, 2020, Mr. Seuthe served the Complaint on Defendant's counsel and stated that he would not "have any more communication with you until I take your deposition." (SUF 13.) The Complaint alleged four causes of action: (1) breach of the implied covenant of good faith and fair dealing; (2) fraud; (3) intentional misrepresentation; (4) negligent misrepresentation. (*See* Dkt. No. 1-1.) In February 2020, Defendant received responses to interrogatories where Plaintiff asserted $25,673 in medical expenses, loss of earnings of $3,200, and ongoing pain and difficulty carrying heavy items. (SUF 14.) In early March 2020, Plaintiff served written discovery on Defendant. Plaintiff also noticed a deposition of Defendant's person most knowledgeable ("PMK") regarding Defendant's handling of the UM claim. (*Id.*) In April 2020, Plaintiff's lawyer served a 998 offer for $249,999.99 and in early May, arbitration was stipulated for August 2020. (SUFs 15, 16, 17.)

On May 27, 2020, Defendant deposed Plaintiff, and Plaintiff testified that he was told on the day of the accident that he had a fractured sternum and that he still experienced daily pain in his chest and ribs. (SUF 20.) In July 2020, Plaintiff noticed a deposition of Defendant's independent medical expert and sent a new CT scan of Plaintiff's sternum along with a medical report, both dated July 2020. (SUF 21.) The report indicated that Plaintiff's sternum fracture would result in ongoing pain and limitations with everyday activities. (SUF 22.) Later that month, Defendant's independent medical expert examined Plaintiff and reviewed his medical records and other records. (SUF 23.) Defendant's expert concluded Plaintiff did not need additional care and that the fractured sternum likely fully healed and Plaintiff was asymptomatic within three to four months after the accident. (SUFs 23, 24.)

Defendant's adjuster then evaluated the claim and allowed for all medical expenses, the unsubstantiated loss of earnings, and extensive pain and suffering to arrive at a high-end evaluation of $125,000 for Plaintiff's ongoing pain and suffering.

4.

(SUF 25.) On August 7, 2020, the parties agreed to a settlement of $125,000 for Plaintiff's UM claim. (SUF 26.) On August 13, 2020, Defendant issued the $125,000 check, and the UM claim settled about eight months after it began. (SUF 27.)

## II. EVIDENTIARY OBJECTIONS

Plaintiff does not object to Defendant's statement of undisputed facts. However, Defendant asserts various evidentiary objections to various declarations of Plaintiff, *see generally* Dkt. Nos. 50-3, 50-4. To the extent the Court relies on objected-to evidence in this Order, such objections are **OVERRULED**. *See Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016).

## III. LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* at 324.

The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986). On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the

5.

plaintiff." *Id.* at 242.

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. 2548). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

### IV. DISCUSSION

#### A. First Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing

##### i. There are No Triable Issues of Fact that Benefits Were Due or that Defendant Failed to Pay the Settlement.

All insurance contracts in California include the implied covenant of good faith and fair dealing. *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 573, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). "When benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable, and numerous other tactics may breach the implied covenant[.]" *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 36, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995) (citation, internal quotation marks omitted). To succeed on a bad faith claim, the insured must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or

6.

without proper cause. *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 721, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (2007).

As a threshold matter, Plaintiff has failed to create a triable issue of material fact that benefits were due under the insurance policy such that *any* claim of bad faith can survive summary judgment. California Insurance Code states that "to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration." Ins. Code, § 11580.2(f); *Rudd v. California Casually Gen. Ins. Co.,* 219 Cal. App. 3d 948 (1990) (holding that the arbitration obligation applies to both UM and UIM claims); *United Services Auto. Assn. v. Superior Court* (1990) 221 Cal.App.3d 79, 83 (same).

Here, Plaintiff sued Defendant in February 2020, *prior to* the parties' August 2020 settlement of the UM claim and *prior to* the completion of UM arbitration which was set to begin in August 2020, meaning that he could not state a claim for bad faith. Plaintiff does not otherwise create a triable issue of material fact that he was otherwise entitled to payment under the insurance policy. The law requires that to be entitled to a bad faith claim, an insured must "allege that his entitlement to damages, and the amount thereof, have been determined in arbitration proceedings with the insurer, as required by subdivision (f) of section 11580.2." *Interinsurance Exchange v. Superior Court,* 213 Cal.App.3d 1439, 1443 (1989); *see also Love v. Fire Ins. Exch.,* 221 Cal.App.3d 1136, 1153 (1990) ("a bad faith claim cannot be maintained unless policy benefits are due."); *Waller v. Truck Ins. Exchange,* 11 Cal. 4th 1, 36 (1995); *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 462 (1974); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 574 (1973); *Rattan v. United Services Auto. Ass'n,* 84 Cal. App. 4th 715, 721-723 (2000).

Importantly, there can also be no breach of contract—and subsequently bad faith claim—because Defendant paid the $125,000 settlement. (SUFs 26, 27.) There can be no breach of contract where an insurer pays all benefits due. *See, e.g., Everett v. State Farm General Ins. Co.*, 162 Cal. App. 4th 649, 660 (2008) ("Everett's policy

expressly provides that State Farm will pay the reasonable cost to replace the damaged property up to the stated policy limits. Because State Farm did just that, Everett's assertion that State Farm failed to pay to replace her home does not support a claim for breach of contract."); *Paulson v. State Farm Mut. Auto. Ins. Co.*, 867 F. Supp. 911, 917-18 (C.D. Cal. 1994) (where insurer initially denied uninsured motorist claim, holding that insurer could not state breach of contract claim because the insurer paid the limits of liability under the policy).

## ii. Additionally, Genuine Disputes Preclude a Claim for Bad Faith.

Even where benefits are due under the policy, withholding them is not bad faith "if the insurer conducts a 'thorough and fair' investigation, after which there remained a 'genuine dispute' as to coverage liability." *Bravo v. U.S. Life Ins. Co. in City of N.Y.*, 701 F. Supp.2d 1145, 1159 (E.D. Cal. 2010) (citing *Wilson, id.*). "'The genuine issue rule [ . . . ] allows a court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable–for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law . . . . On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.'" *Wilson*, 42 Cal. 4th at 724, 68 Cal.Rptr.3d 746, 171 P.3d 1082 (quoting *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161–62 (9th Cir. 2002)). "A dispute is legitimate, if 'it is founded on a basis that is reasonable under all the circumstances.'" *Zubillaga v. Allstate Indemnity Co.*, 12 Cal. App. 5th 1017, 1028, 219 Cal.Rptr.3d 620 (2017) (quoting *Wilson, id.*). The standard of whether a dispute has a reasonable basis is an objective one. *Bosetti v. United States Life Ins. Co. in City of N.Y.*, 175 Cal. App. 4th 1208, 1236–37, 96 Cal.Rptr.3d 744 (2009).

"While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and

8.

only one reasonable inference can be drawn from the evidence." *Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.*, 90 Cal. App. 4th 335, 346, 108 Cal. Rptr. 2d 776 (2001) (citation omitted). Under California law, the genuine dispute doctrine may be applied at the summary judgment stage to purely factual disputes, as appropriate on a case-by-case basis. *Id.* at 348, 108 Cal. Rptr. 2d 776 (citing *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 994 (9th Cir. 2001)). One of the situations in which the question of whether there is a genuine coverage dispute could remain a factual question for the jury, identified in *Guebara* and noted with approval by the *Chateau Chamberay* court, is where the insurer fails to conduct a thorough investigation. *Id.*

Here, Defendant argues that there were three genuine disputes over: (1) the value of the claim; (2) reliance on independent experts; and (3) general damages for pain and suffering. (Mot. at 14-18.) Plaintiff argues that the genuine dispute rule does not apply because Defendant failed to thoroughly and fairly investigate, process, and evaluate the insured's claim. (Opp. at 15-16.) The Court is not persuaded by this argument, nor does the evidence bear it out. Based on the undisputed facts, Plaintiff filed his UM claim and $250,000 demand four months after the accident.[2] Defendant first received medical records to investigate Plaintiff's claim in January 2020 and "[t]here can be no 'unreasonable delay' until the insurer receives adequate information to process the claim and reach an agreement with the insured." *Globe Indem. Co. v. Superior Court*, 6 Cal. App. 4th 725, 731 (1992); *accord Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F.Supp.2d 1154, 1160 (C.D. Cal. 2007) ("delay while the insurer seeks information and investigates the insured's claim" does not give rise to liability for bad faith). Thus, no unreasonable delay occurred where Defendant retained a medical expert, served discovery and took Plaintiff's deposition, and settled the claim in August 2020, within seven months of receiving medical records, two months of

---

[2] Defendant asserts—and Plaintiff does not object—that Defendant first received the settlement demand until January 2020. (SUF 9.)

Plaintiff's deposition, and one month of receipt of the independent medical expert report.

As to the existence of genuine disputes, the Court finds that there was a genuine dispute rooted in reliance on independent medical experts. The insurer is entitled to rely on its expert without incurring bad faith liability. *Guebara*, 237 F.3d at 993 ("The 'genuine dispute' doctrine may be applied where the insurer denied a claim based on the opinions of experts."), *quoting Fraley v. Allstate Ins. Co.,* 81 Cal. App. 4th 1282, 1292 (2000)); *Adams v. GEICO Ins. Co.*, 187 F. Supp. 2d 1207, 1215 (C.D. Cal. 2002). When an insurer's decision was based upon the opinion of an expert, a court may grant summary judgment. *See, e.g., Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 994-95 (9th Cir. 2001) (arson expert); *Cardiner v. Provident Life and Accident Ins. Co.,* 158 F. Supp. 2d 1088, 1102 (C.D. Cal. 2001) (medical expert); *Adams v. Allstate Ins. Co.,* 187 F. Supp. 2d 1207, 1215 (C.D. Cal. 2002) (construction expert); *Allstate Ins. Co. v. Madan,* 889 F. Supp. 374, 380 (C.D. Cal. 1995) (arson expert).

In cases where the plaintiff's injuries are disputed, particularly the extent and nature of the injuries, reliance on experts is particularly beneficial to both parties. *See Maynard,* 499 F. Supp. 2d at 1162-63. Here, there were genuine disputes as to whether Plaintiff's tremors were the result of his underlying Parkinson's Disease, whether his fractured sternum had fully healed, and to what extent he would continue to suffer pain. (SUFs 22, 23, 24.) Defendant ultimately relied on its expert's opinion in settling for $125,000. This presents a genuine dispute barring a claim of bad faith. Because the Court finds that Defendant's reliance on its medical expert precludes a bad faith claim, the Court need not delve into the merits of the remaining two purported genuine disputes; however the Court notes that at oral argument, Plaintiff's counsel asserted on multiple occasions that there was, as Defendant also asserts, a dispute over the value of the claim, as is evidenced by the settlement amount and the original demand.

For the reasons stated above, Defendant's Motion for Summary Judgment as to

the First Cause of Action is **GRANTED**.

### B. Second, Third, and Fourth Causes of Action: Fraud, Intentional Misrepresentation, Negligent Misrepresentation

The elements of a fraud/intentional misrepresentation claim are: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, (4) justifiable reliance, and (e) resulting damage. *Lazar v. Superior Court,* 12 Cal.4th 631, 638 (1996). Negligent misrepresentation also requires proof of (1) a misrepresentation without reasonable ground for believing it to be true, (2) intent to induce reliance, (3) justifiable reliance, and (4) resulting damage. *Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices*, 207 Cal. App. 3d 1277, 1285 (1989).

The Court notes that the alleged fraudulent conduct by Defendant that underlies these claims must be pleaded with the particularity required by Rule 9(b). *See Das v. WMC Mortg. Corp.*, 831 F. Supp. 2d 1147, 1166 (N.D. Cal. 2011) ("Plaintiffs allege three fraud based claims: intentional misrepresentation, fraudulent concealment, and negligent misrepresentation. All of these claims are subject to the heightened pleading requirements pursuant to Federal Rule of Civil Procedure 9(b)."); *Lack v. Cruise Am., Inc.*, No. 17-CV-03399-YGR, 2017 WL 3841863, at *4 (N.D. Cal. Sept. 1, 2017) (Gonzalez Rogers, J.) (holding that claim for negligent misrepresentation is subject to Rule 9(b)); *Vess*, 317 F.3d at 1106 (holding that allegations of fraudulent conduct must be pleaded with particularity even where fraud is not an essential element of the claim they support). To satisfy Rule 9(b), a plaintiff must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Stated differently, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F. 3d at 1106 (citation omitted).

Here, Plaintiff has alleged none of the specifics of Defendant's allegedly fraudulent actions. Plaintiff has not shown the requisite elements of

misrepresentation, justifiable reliance, and resulting harm. All allegations are generic, non-specific, and vague. The Court finds that Plaintiff's allegations fall significantly short of the requirements of Rule 9(b). Further, Plaintiff's Complaint solely relies on the bad faith cause of action as the basis for the remaining three causes of action. Because the Court has granted summary judgment as to this cause of action, the underlying causes of action likewise cannot withstand summary judgment.

Finally, Plaintiff failed to oppose Defendant's Motion as to these three causes of action, thereby abandoning his right to seek relief for any purported fraud or misrepresentation. *See Khan v. Allstate Northbrook Indemnity Co.*, 2021 WL 234352 at *5, (C.D. Cal. Jan. 19, 2021); *Bolbol v. City of Daly City*, 754 F.Supp.2d 1095, 1115 (N.D. Cal. 2010) ("[P]laintiff fails to address this issue in her opposition brief and apparently concedes that she may not proceed on this claim. Accordingly, the court grants summary judgment in favor of defendants as to this claim."); *Ankele v. Hambrick*, 286 F.Supp.2d 485, 496 (E.D. Pa. 2003) ("Plaintiff makes no response to this argument, and thus has waived his opportunity to contest it. Therefore, summary judgment is appropriate.")

For these reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Causes of Action Two (Fraud), Three (Intentional Misrepresentation), and Four (Negligent Misrepresentation).

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. Defendant is **ORDERED** to submit a Proposed Judgment within fourteen (14) days of this Order.

**IT IS SO ORDERED.**

Dated: February 19, 2021

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE